UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

XENG LEE,

                Petitioner,

    v.

BRUCE SCOTT, *et al.*,

                Respondents.

Case No. C26-2179-MLP

ORDER

Petitioner Xeng Lee, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging his immigration detention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. # 9) He contends that his June 1, 2026, arrest and redetention, after having been conditionally released into the United States decades prior, without first receiving pre-deprivation notice and an opportunity to challenge the bases for his redetention, violated both federal regulations and his due process rights under the Fifth Amendment. (*Id.* ¶¶ 7, 34-46.) He also claims that, under *Zadvydas v. Davis*, 533 U.S. 678 (2001), ICE cannot justify his continued detention because his removal to Laos is not significantly likely to occur in the reasonably

ORDER - 1

foreseeable future. (*Id.* ¶¶ 47-51.) He seeks immediate release and injunctive relief related to potential redetention. (*Id.* at 15-16.)

Respondents filed a return (dkt. # 13), supported by an unsworn declaration from their counsel, Katherine Collins (dkt. # 14), and a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Freite Subero (dkt. # 15). Petitioner filed a traverse and a supplemental traverse in reply. (Dkt. ## 16, 17.)

Having considered the parties' submissions, the record, and the governing law, the Court DENIES the petition for the reasons set forth below.[1]

## I.      BACKGROUND

Petitioner is a native of Laos, who first entered the United States near San Francisco as a juvenile refugee in 1989. (Dkt. # 9, ¶ 22; Subero Decl., ¶ 4.) His status was adjusted to that of a lawful permanent resident in 1991. (Dkt. # 9, ¶ 22; Subero Decl., ¶ 5; Collins Decl., ¶ 2, Ex. B at 4.) Petitioner has lived in the United States his entire adult life. (Dkt. # 9, ¶ 22.)

The record is largely silent regarding Petitioner's life in the United States since his arrival, other than Respondents pointing out that "[b]etween 2005 and 2013, Petitioner was convicted of multiple offenses in Alaska, including [DUI], Violation of a Domestic Violence Protective Order, Felony [DUI] and Assault." (Dkt. # 13 at 4.)

On December 19, 2013, ICE lodged an immigration detainer against Petitioner while he was detained at the Anchorage Jail Correctional Center for a criminal matter. (Subero Decl., ¶¶ 11-12.) On March 14, 2014, DHS's Enforcement and Removal Operations ("ERO") served Petitioner with a Notice to Appear ("NTA"), charging him as removable under the Immigration and Nationality Act ("INA") § 237(a)(2)(E)(ii), related to his protection order violation

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

ORDER - 2

conviction. (*Id.* ¶¶ 12-13; *see* Collins Decl., ¶ 2, Ex. B.) The NTA ordered Petitioner to appear before an immigration judge in Portland, Oregon and indicates the date and time for that hearing were "To be set." (Collins Decl., ¶ 2, Ex. B at 2.) ERO also served Petitioner with a Notice of Custody Determination, which indicates DHS determined petitioner would remain detained without bond pending a final determination of his case. (*Id.*, Ex. F.) An immigration judge later reviewed that decision on March 18, 2014, and authorized Petitioner's release upon the posting of bond. (Collins Decl., ¶ 2, Ex. C.)

On August 29, 2014, the immigration court held a merits hearing, at which the immigration judge ordered Petitioner removed to Laos *in absentia* after the judge found Petitioner had failed to appear for the hearing. (*Id.*, Ex. D.)

It is unclear from the current record why, but on November 25, 2014, Petitioner reported to an ERO office and was served with an Order of Supervision ("OSUP") because Laos "failed to issue a valid travel document to effect [his] removal[.]" (Subero Decl., ¶ 17; Collins Decl., ¶ 2, Ex. E at 2-4.) DHS issued similar OSUPs on May 1, 2018, and April 8, 2024. (Collins Decl., ¶ 2, Exs. G, H.) The supervision orders allowed Petitioner to remain released in the United States under certain conditions. (*See id.*)

The circumstances surrounding the government's renewed effort to remove Petitioner are not clear, but on May 18, 2026, Laos issued a travel document for Petitioner. (Subero Decl., ¶ 19.) On June 1, 2026, ICE redetained Petitioner after he checked in to a pre-scheduled ERO appointment in Anchorage. (*Id.* ¶ 20.) ERO served Petitioner with a supervision revocation notice pursuant to 8 C.F.R. § 241.4(l), which indicates ICE "obtained a travel document and scheduled [Petitioner's] removal to take place no later than August 16, 2026." (*Id.*; *see* Collins Decl., ¶ 2, Ex. J.) Officer Subero asserts that Petitioner was "provided an informal interview to

ORDER - 3

respond to the revocation of [his] OSUP." (Subero Decl., ¶ 20; *see* Collins Decl., ¶ 2, Ex. K.) ICE also served Petitioner with a Notice of Imminent Removal to Laos. (*See* Collins Decl., ¶ 2, Ex. M.)

On June 9, 2026, Petitioner filed a motion to reopen his immigration proceedings and rescind the immigration judge's removal order "based on lack of notice", which the parties agree resulted in an automatic stay of his removal to Laos until the motion was decided by an immigration judge. (Dkt. ## 9, ¶ 25, 13 at 7.) The motion was subsequently denied during the pendency of this case on July 28, 2026. (Dkt. # 17 at 1.)

On June 24, 2026, ERO served Petitioner with another Notice of Imminent Removal (*see* Subero Decl., ¶ 23), but that notice is not in the record. It is unclear from the record why ERO served Petitioner with the notice of removal while Petitioner's removal is stayed.

On June 24, 2026, Petitioner filed the instant petition, raising various claims challenging both his June 1, 2026, redetention, as well as his ongoing, post-final-order detention. (*See generally* dkt. # 9.) He seeks release or, alternatively, a custody hearing before a neutral decisionmaker at which the government would bear the burden to justify continued detention by clear and convincing evidence. (*Id.* at 16.) He also seeks a court order requiring the government to produce various documents related to his detention and removal to Laos. (*Id.*)

## II.   LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting

ORDER - 4

relief," and may dispose of habeas matters "as law and justice require." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); 28 U.S.C. § 2243.

### III.    DISCUSSION

Petitioner raises four claims in his petition. First, he contends that Respondents, by threatening removal to Laos while removal was stayed, violated 8 C.F.R. § 1003.23(b)(4)(ii) and due process. (Dkt. # 9, ¶¶ 52-56.) Next, he contends Respondents violated their own regulations, the *Accardi* doctrine, and due process when they redetained him without first (1) providing notice, (2) identifying the changed circumstances supporting revocation, (3) conducting an interview with a meaningful opportunity to respond or offer evidence, or (4) explaining why revocation and detention were warranted. (*Id.* ¶¶ 57-65.) He then asserts that under *Mathews v. Eldridge*, 424 U.S. 319 (1976), Respondents' failure to provide pre-deprivation process before revoking his liberty interest in remaining free violated his right to procedural due process. (*Id.* ¶¶ 66-71.) Finally, he challenges his post-final-order detention as violative of the INA, *Zadvydas*, and the Fifth Amendment, arguing that Respondents have not shown that his removal to Laos is significantly likely to occur in the reasonably foreseeable future. (*Id.* ¶¶ 74-78.)

### A.    Violation of 8 C.F.R. § 1003.23(b)(4)(ii)

Petitioner's claim that Respondents have violated the stay of removal was mooted during the pendency of this case. Section 1003.23(b)(4)(ii) reads, in pertinent part:

> Order entered in absentia or in removal proceedings. . . . An order entered in absentia pursuant to section 240(b)(5) may be rescinded upon a motion to reopen filed at any time upon the [noncitizen's] demonstration of lack of notice in accordance with section 239(a)(1) or (2) of the Act, or upon the [noncitizen's] demonstration of the [noncitizen's] Federal or State custody and the failure to appear was through no fault of the [noncitizen]. . . . The filing of a motion under this paragraph (b)(4)(ii) shall stay the removal of the [noncitizen] pending disposition of the motion by the immigration judge.

8 C.F.R. § 1003.23(b)(4)(ii).

ORDER - 5

On July 28, 2026, Petitioner filed a "Notice of Material Development and Request for Leave to File Limited Supplemental Traverse." (Dkt. # 17.) In his supplemental traverse he acknowledges the automatic stay under § 1003.23(b)(4)(ii) no longer remains in effect. (*Id.*) The record reflects Petitioner remained detained at the NWIPC while the stay was in place and there is no other evidence in the record showing Respondents otherwise violated § 1003.23(b)(4)(ii). Petitioner's first claim for relief (dkt. # 9, ¶¶ 52-56) is therefore denied as moot.[2]

### B.      Violation of Federal Regulations

Petitioner asserts Respondents failed to comply with 8 C.F.R. § 241.13(i), the regulation governing revocation of release. (Dkt. # 9, ¶ 7.) Specifically, Petitioner asserts that Respondents failed to notify him of the reason for revocation, conduct a prompt informal interview after he was returned to custody, afford him an opportunity to respond or submit evidence, or evaluate contested facts and determine whether those facts warrant revocation. (*Id.* ¶¶ 36-37 ("ICE did none of that here.").)

In response, Respondents agree that Petitioner's revocation was governed under §§ 241.13(i) and (l) but disagree that ICE failed to comply with the applicable regulations. (Dkt. # 13 at 3, 9.) Respondents contend that Petitioner's OSUP was revoked because the circumstances of his case changed after ICE obtained a travel document to Laos, as documented in the Notice of OSUP Revocation. (*Id.* at 9.) Respondents further contend that the notice provided "the specific reasons for its determination[.]") (*Id.* (citing Collins Decl., ¶ 2, Ex. J).) Respondents also point out that an ICE officer conducted an informal interview the same day of Petitioner's redetention, which gave Petitioner an opportunity to respond. (*Id.* (citing Collins

---

[2] Petitioner's supplemental pleading also seeks leave to file additional briefing "addressing only the effect of the Immigration Judge's denial on the pending habeas issues." (Dkt. # 17 at 2.) The Court does not find additional briefing is necessary. To the extent Petitioner's request can be construed as a motion, *see* Fed. R. Civ. P. 7(b)(1), it is denied.

ORDER - 6

Decl., ¶ 2, Ex. K).) According to Respondents, this process reflects Petitioner was detained for cause and was given notice and an opportunity to respond, all in compliance with § 241.13(i). (Dkt. # 13 at 9-10.)

In reply, Petitioner acknowledges the government's production of the Notice of Revocation and the Informal Interview form but maintains that such process was deficient. (Dkt. # 16 at 1.) According to Petitioner, "[§] 241.13(i)(3) require[d] more" and asserts that the "[revocation] notice did not attach the travel document, identify its type, issuance date, expiration date, or conditions, identify a flight or itinerary, [] advise what facts or documents [he] could contest[,] [or] advise that he could submit evidence showing no significant likelihood of removal in the reasonably foreseeable future." (*Id.*)

Section 241.13(i)(3) provides:

> (3) Revocation procedures. Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification. The [noncitizen] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

Thus, the plain language of the regulation requires DHS to notify the noncitizen of the reason for revocation, conduct a prompt informal interview after the noncitizen is returned to custody, and provide the opportunity to submit evidence or information, which includes an evaluation of contested facts. The record reflects those things happened the day Petitioner was redetained. As noted above, Petitioner was notified of the reason for revocation (the government procuring a travel document), provided an informal interview, and afforded an opportunity to

ORDER - 7

respond. (Subero Decl., ¶ 20; *see* Collins Decl., ¶ 2, Exs. J, K.) Petitioner does not cite to any authority supporting his position that the government was required under § 241.13(i)(3) to provide documents or other flight information.

Petitioner further argues that none of the documents provided by Respondents shows a process that "evaluate[d] contested facts . . . [or] explain[ed] why detention remains warranted after the automatic stay." (*Id.* at 4.) However, the record does not reflect the existence of contested facts during Petitioner's revocation interview. The interview form simply documents that Petitioner acknowledged having a five-year-old child for whom he provided care, depending on his child's mother's work schedule. (*See* Collins Decl., ¶ 2, Ex. K.) Even here, Petitioner does not identify the facts he believes were in dispute and thus required to be evaluated. (*See generally* dkt. ## 9, 16.)

Finally, as for Petitioner's claim that Respondents failed to explain "why detention remain[ed] warranted after the automatic stay," the Court reminds Petitioner that his motion to reopen had not yet been filed. Petitioner's revocation and informal interview occurred on June 1, 2026 (Subero Decl., ¶ 20; Collins Decl., ¶ 2, Ex. K), but he did not file his motion to reopen, thus triggering the automatic stay, until June 9, 2026. (Subero Decl., ¶ 22.) The June 9, 2026, stay, therefore, has no effect on Petitioner's challenge to Respondents' compliance with regulations at the time of his June 1, 2026, redetention. Respondents were not required to justify their conduct in light of something that had not yet occurred. On the current record, the Court does not find that Respondents failed to comply with 8 C.F.R. § 241.13(i) and accordingly denies Petitioner's second claim for relief (dkt. # 9, ¶¶ 57-65).[3]

---

[3] Petitioner's second cause of action also references violations of the *Accardi* doctrine and due process, but does not contain any factual development or legal argument for those claims.

ORDER - 8

## C.    *Mathews* and Due Process

Whether the government complied with the federal regulations governing revocation is different than whether the government complied with due process. Courts in this District have acknowledged that complying with federal regulations does not necessarily equate to satisfying due process under the Fifth Amendment. *See, e.g., Gregorio Ordoñez v. Bondi,* 2025 WL 3852444, at *4 (W.D. Wash. Dec. 19, 2025), *report and recommendation adopted*, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026); *Wana v. Bondi*, 2025 WL 3628634, at *5 (W.D. Wash. Dec. 15, 2025).

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the federal government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1972). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

The parties agree *Mathews* provides the appropriate framework to assess the process provided by the government in redetaining Petitioner, and whether it complied with due process, but reach opposite conclusions. (*Compare* dkt. # 9 at 9-11, *with* dkt. # 13 at 10-11.)

ORDER - 9

a.      *Private Interest*

Freedom from physical confinement is among the most fundamental liberty interests, and noncitizens are entitled to due process in its deprivation. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas*, 533 U.S. at 690-96.

Respondents acknowledge Petitioner's liberty interest but argue that his liberty interest "[was] reduced" because he is "subject to a final executable order of removal." (Dkt. # 13 at 10.) Thus, according to Respondents, Petitioner's "release on [an] OSUP was always subject, in part, on ICE's ability to effectuate his removal." (*Id.*)

The Supreme Court has also repeatedly recognized that "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025). That said, on the day he was detained, Petitioner's removal appeared significantly likely to occur in the reasonably foreseeable future, as evidenced by the travel document issued by the Lao government. *Zadvydas*, 533 U.S. at 699; *see also Saechao v. Scott*, 2026 WL 626765, at *4 (W.D. Wash. Mar. 5, 2026) (finding noncitizen's liberty interest in freedom from detention "significantly reduced" where his detention occurred after the government secured a travel document for his removal).

While Petitioner takes issue with Respondents' failure to provide the travel document here (*see* dkt. # 16 at 5), the Court has no independent reason to question the veracity of Officer Subero's sworn declaration that a travel document for Petitioner issued on May 18, 2026. The Court therefore finds that Petitioner, like the similarly-situated petitioner in *Saechao*, had a reduced liberty interest in remaining free at the time of his June 1, 2026, redetention.

ORDER - 10

b.        *Risk of Erroneous Deprivation and Value of Safeguards*

Petitioner asserts there was a high risk of erroneous deprivation because "ICE acted unilaterally and relied on alleged Lao travel document activity that [he] could not read, understand, or challenge." (Dkt. # 9, ¶ 43-44.)

Courts in this District have found a low risk of erroneous deprivation when the government has a valid travel document prior to redetaining the noncitizen. *See, e.g., Saechao*, 2026 WL 676765, at *4; *Siackasorn v. Mullin*, 2026 WL 1745835, at *4 (W.D. Wash. June 17, 2026; *Thiravong v. Scott*, 2026 WL 1382356, at *3 (W.D. Wash. May 18, 2026). As noted above, Respondents obtained a travel document to Laos prior to redetaining Petitioner. The Court therefore finds there was a low risk that Petitioner would be erroneously deprived of his interest in remaining free.

c.        *Governmental Interest*

The government "has a legitimate interest in ensuring that a noncitizen subject to a final order of removal appears when necessary to facilitate removal." *See Saelee v. Bondi*, 2026 WL 221513, at *6 (W.D. Wash. Jan. 28, 2026) (citing *Tran v. Bondi*, 2025 WL 3725677, at *3 (W.D. Wash. Dec. 24, 2025)). That interest is "[s]tronger yet…where, as here, the government has shown that removal is likely to occur in the reasonably foreseeable future." *Saechao*, 2026 WL 626765, at *5; *see also Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008).

Petitioner asserts that "the government's burden is low" and argues ICE can provide a written notice, disclose the basis for revocation, conduct the required interview, and allow a response. (Dkt. # 16 at 5.)

As noted above, Respondents *did* provide written notice, disclose the basis for revocation, conduct an interview, and provide an opportunity for Petitioner to respond. *See*

ORDER - 11

*supra*, Part B. Further, Petitioner's removal to Laos appeared likely at the time he was detained. While the timing of Petitioner's removal may have been an open question during the stay, the *Mathews* analysis is focused on the process provided at the time of redetention. Accordingly, the Court finds that, at the time of his redetention, Respondents had a legitimate interest in redetaining Petitioner to facilitate his removal. The third *Mathews* factor weighs in favor of Respondents.

Considered together, the *Mathews* factors weigh in the government's favor. Accordingly, the Court finds the process provided by Respondents in redetaining Petitioner did not violate his due process rights under the Fifth Amendment. The Court denies Petitioner's third claim for relief. (Dkt. # 9, ¶¶ 66-71.)

**D.    *Zadvydas* and Post-Removal Order Detention**

Petitioner argues his removal is no longer imminent because "federal regulation presently bars removal." (Dkt. # 9, ¶ 48.) As noted above, however, the stay is no longer in place. *See supra*, Part A. Petitioner further argues that, under *Zadvydas*, Respondents must produce "the custody and travel document record, release under supervision, or [provide] a prompt custody hearing[.]" (*Id.* ¶ 50.) Respondents contend Petitioner is detained under 8 U.S.C. § 1231(a)(6) and argue that Petitioner has not shown good reason to believe his removal to Laos is not significantly likely to occur in the reasonably foreseeable future. (Dkt. # 13 at 8 (citing *Zadvydas*, 522 U.S. at 701).)

In *Zadvydas*, the Supreme Court construed 8 U.S.C. § 1231(a)(6) to authorize post-removal-period detention only for the period reasonably necessary to effect removal. 533 U.S. at 689, 699. The Court adopted a presumption that detention up to six months after the removal order becomes final is reasonable when it is related to effectuating removal. *Id.* at 701.

ORDER - 12

"After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If removal is not reasonably foreseeable, "continued detention is no longer authorized by statute." *Id.* at 699.

Petitioner's claim fails at the first step in the *Zadvydas* framework. At the time of this Order, Petitioner will have been detained a total of fifty-seven days—well within the six-month period articulated by the Court in *Zadvydas*. Petitioner argues that "[c]ourts in this District reject the proposition that the *Zadvydas* clock automatically restarts with each redetention after prior post-order release." (Dkt. # 16 at 5 (first citing *Somsanuk v. Bondi*, 2026 WL 221139, at *3 (W.D. Wash. Jan. 28, 2026), then citing *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025).)

Petitioner's reliance on *Somsanuk* and *Nguyen* is misplaced because those cases involved aggregated periods of detention, in which the court rejected the government's argument that the six-month detention period articulated in *Zadvydas* needed to be consecutive. Here, Petitioner's removal order became final *in absentia*—*i.e.*, while Petitioner was out of custody. The only post-order detention period apparent from the record is Petitioner's current detention, which started on June 1, 2026. Thus, the six-month "*Zadvydas* clock" under § 1231(a)(6) is not restarting, as Petitioner contends, but rather only now beginning.

On the current record, the Court cannot find that Petitioner's two-month post-order detention is presumptively unreasonable under *Zadvydas* and therefore entitles him to relief. The Court thus denies Petitioner's fourth claim for relief. (Dkt. # 9, ¶¶ 72-78.) Nothing in this Order prevents Petitioner from seeking habeas relief in the future, should it become necessary.

ORDER - 13

### IV.    CONCLUSION

For the reasons articulated above, the Court DENIES Petitioner's petition for writ of habeas corpus (dkt. # 9) without prejudice.

DATED this 29th day of July, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 14